IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| EAST TENNESSEE NATURAL GAS CO., | ) <br> ) Case No. 4:02-CV-00146 <br> ) |
| Plaintiff, | ) <br> ) **MEMORANDUM OPINION** |
| v. | ) <br> ) |
| 3.04 ACRES IN PATRICK COUNTY, JERRY S. THOMAS, et al., | ) By: Jackson L. Kiser <br> )    Senior United States District Judge <br> ) |
| Defendants. | ) |

Before me is the *Plaintiff's Motion for a New Trial or in the Alternative for Remittitur.* For the reasons stated herein, I find that the jury's verdict in this case is against the clear weight of evidence and that upholding such a verdict would result in a miscarriage justice. The jury's award of $770,544 to the Defendants as just compensation for the land taken from it by the Plaintiff is excessive because insufficient evidence supports it. Consequently, I will **grant** the *Plaintiff's Motion for a New Trial.*

I.  **PROCEDURAL HISTORY**

The Plaintiff East Tennessee Natural Gas ("Plaintiff") filed its *Complaint* in this case on December 6, 2002. A three day jury trial was held before this Court from October 10 through October 12, 2005. At the culmination of the trial, the jury returned a *Verdict* in which it determined that $770,544 was the just compensation due the Defendants. *Judgment* was entered on the jury's *Verdict* by this Court on October 25, 2005. On November 3, 2005 the Plaintiff filed a *Motion for a New Trial or in the Alternative for Remittitur* with this Court. On November 17, 2005 the Defendants filed a *Memorandum in Opposition.* The parties waived oral argument and

-1-

asked the Court to make a ruling on the Plaintiff's *Motion* based on the briefs filed.

## II. STATEMENT OF FACTS

The single issue before the jury at trial in this case was the value of just compensation due the Defendants as a result of the Plaintiff's condemnation of their property for purposes of installing a natural gas pipeline. At trial, the Defendants relied on the testimony of one witness, Tommy Childress, to establish the value of the subject property before and after a portion of the property was taken by the Plaintiff.

Childress prepared three different valuation reports in this case. In each report, Childress changed his opinion of the value of the Defendants' property before it was taken by the Plaintiff. At trial, Childress admitted that he did not know the acreage of the Defendants' property, but instead relied on the landowner and attorneys to provide him with the information. Childress relied on the same three property sales in each of his three reports to support his opinion of the value of the Thomas property before the taking. In all three reports, Childress changed his opinion of the before value of the Thomas property – based on no new information. None of Childress' reports cite anything to justify his ultimate finding that the value of the property decreased because of the taking. Moreover, Childress made an erroneous assumption in all three reports that the land was suitable for development as a golf course community.

At trial, Childress never gave his opinion of the fair market value of the property immediately after the May 30, 2003 taking; instead, Childress merely opined that the entire parcel of the Thomas property was devalued by the taking. Childress' devaluation opinion was based entirely on the sale of the Thomas property to Hopkins, LLC; the sale occurred after the taking. However, Childress failed to testify that the sale price of the property represented the fair

market value of the Thomas property immediately after the taking. In fact, no witness testified that the sale price was the fair market value of the property immediately after the taking.

The contractual sale price of the Thomas property was $1,125,000, but Childress reduced that number to $1,100,000 to allegedly account for personal property involved in the transaction and a commission paid to the real estate agent. Childress also testified at trial that in spite of Thomas selling the property to Hopkins, LLC, Thomas retained the right to pursue his claim for just compensation against the Plaintiff. Furthermore, Childress testified that Thomas received a declaration from Hopkins, LLC that the pipeline impaired the property value. In sum, this was not a typical arm's length sale.

On cross examination, Childress admitted that in determining the value of the Thomas property after the taking, he did not consider the sale of similar properties along the pipeline to determine if the pipeline does indeed affect the sales price. Childress also admitted that the easement held by the Plaintiff does not restrict use of the Thomas property beyond fifty feet of the pipeline, and that the pipeline easement is not visible from most of the Thomas property.

The Defendants also presented the testimony of Johnny Lambert. Lambert testified about current property sales in the area near the pipeline, current listing prices, and stated that some potential buyers are not interested in property which contains a pipeline. However, neither Lambert nor any other witness in this case testified that the properties to which Lambert referred were comparable to the Thomas property. Furthermore, no witness provided evidence of the fair market value of the Thomas property at the time of sale.

The Plaintiff presented witnesses who testified about the specific damages caused to the Thomas property by the taking. James Johnston testified for the Plaintiff that an area of 200 feet

on each side of the pipeline was damaged. Johnston further testified that the market does not recognize that the taking damaged the Thomas property beyond 200 feet.

Barton Tuck testified that the location of a pipeline on a portion of a property does not prevent the development of residential homes on a portion of the property outside the pipeline easement. Childress specifically agreed that the Thomas property could be developed outside the easement.

Albert Allen, who also testified for the Plaintiff, opined that property values as a whole are not adversely impacted by the installation of a pipeline. Allen offered specific sales data to support his opinion which were not disputed by the Defendants.

## III. LEGAL STANDARD

Rule 59(a) of the *Federal Rules of Civil Procedure* gives the Plaintiff the legal right to bring its *Motion* before this Court. Rule 59(a) states:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

In *Aetna Casualty v. Yeatts*, the Fourth Circuit established the standard for deciding whether a new trial should be granted:

> On a motion for a new trial, it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. 122 F.2d 350, 352 - 353 (4th Cir. 1941).

As an alternative to granting a new trial, federal courts have a long-standing practice of resolving excessive verdicts by offering the plaintiff a choice between granting a motion for a new trial and denying the motion upon the acceptance by the plaintiff of a remittitur in a stated

amount. *See, G.M. Garrett Realty v. Century 21*, 17 Fed. Appx. 169, 172 - 173 (4th Cir. 2001).

When a reviewing Court concludes that a verdict is excessive because insufficient evidence supports that verdict, it is that court's duty to require a remittitur or order a new trial. *See, Cline v. Wal-Mart Stores*, 144 F.3d 294, 305 (4th Cir. 1998). Additionally, remittitur is appropriate in condemnation actions. *See, U.S. v. Certain Parcels of Land*, 149 F.2d 81 (5th Cir. 1945).

**IV.     DISCUSSION**

In its *Memorandum in Support of its Motion*, the Plaintiff argues that the jury verdict is against the clear weight of evidence because Childress' opinion of the value of the subject property – before and after the taking – is not supported by reliable evidence. I agree. Childress' testimony is unreliable because he submitted three different reports in this case in which he detailed his estimate of the value of the Thomas property before and after the taking. Even though Childress used the same three sales as the basis of his appraisals in all three reports, Childress alleged that the per acre value of the property was $6,100 in one report,[1] $6,505 in one report,[2] and $6,100 in the other report;[3] when looking at the reports it is impossible to tell the

---

[1] Defendants' own Exhibit 6 is an appraisal report containing an appraisal of $6,100 per acre. The Exhibit is dated May 30, 2003 on its first page, May 19, 2005 on its second and third pages, and October 4, 2005 on its tenth page. The appraisal itself appears on the third page of the Exhibit.

[2] Plaintiff's Exhibit 1 is an appraisal report containing an appraisal of $6,506 per acre. The Exhibit contains a cover letter from the Defendants' counsel, dated July 5, 2005, which accompanies Childress' report. The third page of the Exhibit is dated May 30, 2003. The appraisal itself appears on the eighth page of the Exhibit.

[3] Plaintiff's Exhibit 2 is an appraisal report containing an appraisal of $6,100 per acre. The Exhibit contains a cover letter from the Defendants' counsel, dated October 5, 2005 or five days before the first day of trial, which accompanies Childress' updated appraisal. The second page of the Exhibit is dated May 30, 2003, the third page is dated May 19, 2005, the ninth page

order in which Childress generated the reports.

Another major flaw in Childress' testimony is that he assumed the land could be developed for a golf course – this assumption appears in all three of his appraisal reports. There is no evidence in the record that the land was suitable for a golf course nor did Childress testify that he consulted with a golf course architect. This error reflects the Defendants' change of tactics. Initially the Defendants were asserting that the plan was to develop a golf course and sell lots, but by the time of trial the Defendants had abandoned that position. To counter Defendants' claim that the land was suitable for a golf course, the Plaintiff retained an expert, Barton Tuck, who was prepared to testify that the land was not suitable for a golf course.[4] It is apparent that land which is suitable for a golf course would have a higher value than land which is not. One has to conclude that by assuming the land was suitable for development as a golf course community, Childress placed a higher value on the land than he otherwise would have.

The Plaintiff also argues in its *Memorandum* that the Defendants offered insufficient evidence to support the verdict on the fair market value of the property after the taking. I also agree with this argument. The only evidence presented to this effect by the Defendants was the value of the contract sale between Thomas and Hopkins, LLC for $1,250,000. Childress failed to testify that this contract price constituted the fair market value of the property, and Childress also failed to testify that this was a typical arm's length sale. Instead, Childress testified that

---

is dated October 4, 2005, and the tenth and thirteen pages are dated May 19, 2005. The appraisal itself appears on the eighth page of the Exhibit.

[4] The Defendants objected to Tuck's testimony about the unsuitability of the land for a golf course as being irrelevant because the Defendants had produced no evidence that the land was suitable for a golf course. I sustained the objection.

"one sale does not make a market," and that the sale took place months after the taking and during the construction of the pipeline.  Childress further testified that the transaction also yielded Thomas the retention of his legal right to pursue his claim against the Plaintiff, a representation from the buyer that the pipeline impaired the value of the property, and a contractual commitment from the buyer that it would not act to impair Thomas' rights against the Plaintiff.  Furthermore, Childress testified that he reduced the transaction contract price of $1,250,000 to $1,100,000 in attempting to determine the value of the Thomas property after the taking.  Childress claimed that the realtor's fee and the price of other miscellaneous personal property involved in the transaction had to be excluded from the contract price to reflect the true value of the Thomas property after the taking.

The Defendants put no evidence in the record that the contract price paid by Hopkins, LLC for the Thomas property was the fair market value of the Thomas property after the taking. Furthermore, the Defendants even failed to establish that the sale between Thomas and Hopkins was a transaction between two independent parties.  Finally, Childress' practice of reducing the contract price because realtor's fees and personal property were involved in the transaction is improper methodology for arriving at the fair market value of the real estate.

In addition to Childress, Lambert provided testimony for the Defendants regarding property sales listing prices, and testified that some buyers did not wish to purchase property with a pipeline on it.  Even when Lambert's testimony is coupled with Childress', the Defendants still fall short of providing evidence sufficient to support the ultimate jury verdict in this case.

To counter the evidence presented by the Defendants, the Plaintiff presented witnesses

who gave more substantive testimony.  James Johnston testified that the harm to the Thomas property from the taking is limited to an area of 200 feet on each side of the pipeline.  Barton Tuck testified that development outside the easement area is not restricted by the pipeline.  Allen testified that there is no overall impact of pipelines on property values stemming from the specific project of which Mr. Thomas' property was subject.

Unlike Childress and Lambert who relied largely on opinions of others, the witnesses presented by the Plaintiff proffered opinions based wholly on specific data and facts.  The ultimate jury verdict in this case was against the clear weight of evidence and is excessive.

I further find that if the jury verdict is allowed to stand in this case, it will result in a miscarriage of justice.  Based on the evidence presented in this case, the jury unjustly compensated the Defendants.  Simply put, $770,544 is an outrageous award for the property that was taken by the Plaintiff and the resulting damage to the residue.

In its *Memorandum in Response*, the Defendants point out that the Plaintiff did not object to the clear instructions that were given by this Court to the jury setting forth the criteria for determining just compensation.  The Defendants also point out that the Plaintiff played a role in selecting the jurors who would ultimately determine just compensation in this case.  The Defendants note that the Plaintiff did not object to the qualifications of its expert, Tommy Childress, and mention that the Plaintiff had an opportunity to cross-examine Childress.  None of these arguments by the Defendants address the issue of the verdict's excessiveness.  While the Defendants' points are well taken with regard to the procedural aspects of the trial, I still find that the evidence presented by the Defendants is insufficient to support the jury's award of $770,544 to the Defendants.

The Defendants cite the U.S. Supreme Court for the proposition that setting aside a jury's actions should be taken seriously with the utmost precaution. See, *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35 (1944). This has been done.

The Defendants, citing Fourth Circuit precedent, correctly argue that the jury, which viewed the property and which heard the witnesses and saw their demeanor, was free to choose which evidence it believed to be more believable and credible. See, *Barnes v. South Carolina Public Service Authority*, 120 F.2d 439, 440 (4th Cir. 1941). However, the Fourth Circuit has also made it clear that "it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the clear weight of the evidence;" as my findings above indicate, I am of such an opinion in this case. *See*, *Aetna Casualty v. Yeatts*, 122 F.2d 350, 352 – 353 (4th Cir. 1941).

As stated above, I am permitted to either grant the *Plaintiff's Motion for Remittitur* in this case or grant the *Plaintiff's Motion for a New Trial* if I find that the jury's verdict is excessive and is against the clear weight of the evidence. *See Aetna Casualty v. Yeatts*, 122 F.2d 350, 352 – 353 (4th Cir. 1941). I do not believe this is a proper case for the Court to order remittitur. A new trial is the more appropriate remedy.

## V. CONCLUSION

For the reasons stated above, I find that the jury's verdict in this case is against the clear weight of evidence and that upholding such a verdict would result in a miscarriage justice. The jury's award of $770,544 to the Defendants as just compensation for the land taken from it by the Plaintiff is excessive because insufficient evidence supports it. Consequently, an *Order* will be entered by this Court granting the *Plaintiff's Motion for a New Trial.*

The clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record.

Entered this 24th day of January, 2006.

                                                s/Jackson L. Kiser
                                                Senior United States District Judge