IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| EAST TENNESSEE NATURAL GAS CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:02-CV-000146 |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| 3.04 ACRES IN PATRICK COUNTY, ) | |
| JERRY S. THOMAS, ) | By: Jackson L. Kiser |
| BETTY B. THOMAS, et. al., ) | Senior United States District Judge |
| ) | |
| Defendants. ) | |

Before me is the *Defendant's Motion for Revocation of the Court's Order Granting Plaintiff a New Trial.* For the reasons stated herein, I find that the second trial has not shown that my January 24, 2006 decision to grant the new trial was in error and my original order granting that trial still stands. Consequently, I will **DENY** the *Defendant's Motion Revocation of the Court's Order Granting Plaintiff a New Trial.*

## I. PROCEDURAL HISTORY

The Plaintiff East Tennessee Natural Gas ("ETNG") filed its Complaint in this case on December 6, 2002. I presided over a three day jury trial from October 10 through October 12, 2005. The jury returned a verdict awarding $770,544 as the just compensation due the Defendants. Upon the Plaintiff's Motion for a New Trial, I ruled that the verdict was against the clear weight of the evidence and ordered a new trial. Memorandum Opinion, January 24, 2006.

After a new trial lasting five days, the jury returned a verdict with a just compensation amount of $118,859.00 on January 23, 2007. The Defendant land owners filed this Motion for Revocation of the Court's Order Granting Plaintiff a New Trial on February 21, 2007; the

-1-

Plaintiff responded on March 9, 2007.

## II. STATEMENT OF FACTS

The only issue before the jury at both trials was the value of just compensation due the Defendants as a result of the Plaintiff's condemnation of their 394 acre property for purposes of installing a natural gas pipeline. After the taking had occurred, the landowners sold the property to John Hopkins, owner of Hopkins, LLC, but reserved the right to whatever just compensation amount was owed for the easement.

In the second trial, four expert appraisers testified and their opinions on just compensation ranged from $12,800.00 to $2,423,300.00. The jury also heard from John Hopkins, the buyer and current owner of the subject property, who testified that he would not have been willing in 2003 to pay more for the property if the pipeline had not been there.

The jury also heard from Dennis Newcomer, the supervisor for construction of the pipeline in question. He testified and was cross-examined on ability of the pipeline to withstand being crossed by vehicles of various weights. In addition, ETNG showed photographs, authenticated by John Harris the Operations Manager for Duke Energy, depicting roads crossing other natural gas pipelines. The Defendants objected to these photographs because the pipelines depicted there differed in size from the pipeline in this case and also because the easements in the photographs were created by different language than the easement in this case. I denied their objection, but allowed them to cross-examine Harris on those points.

Finally, in the first trial, both parties exercised three peremptory strikes before I empaneled the jury. In this case, the Defendants exercised only two peremptory strikes.

## III. LEGAL STANDARD

-2-

A trial court may revoke an interlocutory order to grant a new trial after that new trial has concluded if it appears that the original order was in error because the trial court retains plenary power over an interlocutory order. *See Hardin v. Hayes, 52 F.3d 934, 938 (11th Cir. 1995); Gallimore v. Missouri P. R. Co.*, 635 F.2d 1165, 1170 (5th Cir. 1981).

**IV. DISCUSSION**

The Defendants offer three arguments for the revocation of my January 24, 2006 which granted a new trial and vacated the jury's award of $770,554: 1) the evidence introduced at the new trial confirms that the prior verdict was valid; 2) empaneling a jury before the Defendant had the opportunity to use three peremptory strikes in the second trial was an error; 3) admitting the testimony of current land owner John Hopkins on the value and damage to the property, pictures of roads over pipelines on other easements, and inadmissible hearsay opinions of undisclosed engineers was also in error. At trial, I ruled on the latter two arguments and stated the reason on the record. For the reasons stated there and outlined below, I reject these arguments and my order of January 24, 2006 stands as does the jury verdict of January 23, 2007.

I will first address the Defendant's complaints about the use of peremptory strikes during the jury selection process. The Defendant points out that the first verdict came after both parties had exercised three peremptory strikes and the second verdict came after the Defendant had only exercised two strikes. This is true, although the implied causal connection between the number of peremptory strikes exercised and the difference in the resulting verdict is logically unsound. The fact remains that the Defendants chose not to exercise their third strike in the second trial. Neither I nor the Plaintiff prevented them from doing so. If failing to strike a juror contributed to the second verdict, that fault lies solely with the Defendants who chose not to employ their

-3-

third peremptory strike.

The Defendants cited *United States v. Ricks* in which the court held that the "struck jury" method for administering peremptory strikes was subject to less scrutiny than the "jury box" method in a criminal case. 802 F.2d 731, 734 (4th Cir. 1986). In the "struck jury" system, the court submits a list of qualified veniremen to both parties and each side exercises its strikes. *Id*. If there are more names on the list than are needed for the jury after both sides have struck names, the judge must decide which remaining persons on the list are selected for service. *Id*. In the "jury box" method, parties exercise their challenges against jurors who are already seated in the box and who will remain on the jury unless challenged. *Id*. In the second trial, I did not employ either method. I made it clear that the first six venire members, listed randomly after all potential jurors struck for cause, would remain on the jury if not struck by either party's three peremptory strikes.

I turn next to the testimony of John Hopkins. Defendants argue that Hopkins' testimony that "his personal opinion in January, 2007, is that 'if the pipeline had not been there,' he would not have been willing to pay more money for the property in 2003" is speculative. They offer no case law or other authority to support this argument. As a party to the land sale contract, John Hopkins' testimony was relevant to the issue of just compensation. Courts have long allowed land owners to testify to the perceived value of their land. *Justice v. Pennzoil Co.*, 598 F.2d 1339, 1344 (4th Cir. 1979). My decision to permit his testimony therefore stands.

I also reject the Defendant's argument that it was erroneous and prejudicial to admit Plaintiff ETNG's photographs of areas depicting land with underground pipelines and accompanying easements which were different than the ones at issue in this case. Again, this

-4-

argument was presented without citation to any legal authority.   The Plaintiff submitted the photographs to rebut the Defendants' claims regarding the difficulty of crossing pipelines with roads.  The pipeline in this case involved a 24 inch diameter pipeline while the photographs depicted smaller eight inch pipelines.  The language in the easement documents also differed.  The issue was fully developed at trial, and the Defendants extensively cross-examined the Plaintiff's witnesses on the differences between the pipelines and easement language.  The jury considered these differences in rendering their verdict, and I see no reason to disturb it.

Finally, I turn to the testimony of ETNG's supervisor for construction of the pipeline, Mr. Newcomer, regarding engineering opinions on the weights of vehicles that could cross the pipeline. The Defendants argue that he offered hearsay opinions from absent engineers on this issue.  I remain unconvinced.  The amount of weight that a pipeline can bear is determined by a mathematical formula considering variables such as the size of the pipeline, the amount and type of cover, the tensile strength of the steel.  Mr. Newcomer is aware of this formula and can testify to it as it would be of the type of facts or data reasonably relied upon by experts in his field.  Fed. R. Evid. 703.  While the Defendants claim that Mr. Newcomers' opinions prejudiced their case in the second trial, the Plaintiff points out that Mr. Newcomer also testified about what weights could cross the pipeline in the first trial, apparently with no prejudicial effect.

## V.      CONCLUSION

For the reasons stated above, I find that the second trial has not shown that my January 24, 2006 decision to grant the new trial was in error. Consequently, I will **DENY** the *Defendant's Motion for Revocation of the Court's Order Granting Plaintiff a New Trial.*

The clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying

*Order* to all counsel of record.

      Entered this 12th day of April, 2007

                                                  s/Jackson L. Kiser
                                                  Senior United States District Judge